IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

YAMIRA POSADA,

    **Plaintiff,**

v.      No. 1:21-cv-00972 MIS-JHR

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION AFFIRMING THE DECISION OF THE COMMISSIONER DENYING BENEFITS**

Before the Court is Plaintiff Yamira Posada's Motion to Reverse or Remand. [Doc. 24]. United States District Judge Margaret Strickland referred this case to me for analysis and a recommended disposition on Posada's challenge to the Commissioner's final decision denying her application for protective disability insurance benefits. [Docs. 6, 28]. Having reviewed the parties' briefing and the Administrative Record, the I find that Posada's arguments do not warrant remand and thus recommend the Court **DENY** Posada's Motion and **AFFIRM** the Commissioner's final decision denying benefits under the Social Security Act.

    **I.**    **BACKGROUND AND PROCEDURAL HISTORY**

Posada protectively filed her application for disability insurance benefits alleging disability beginning on November 30, 2017. AR at 21. Posada's disability claim was denied both initially and upon reconsideration. *Id.* After requesting a hearing, administrative law judge ("ALJ") Lillian Richter held a telephonic hearing on September 17, 2020, which Posada, her attorney, and an impartial vocational expert ("VE") attended. *Id.* The ALJ issued her decision finding Posada not disabled on March 11, 2021. AR 21-33. On July 25, 2022, Plaintiff moved to reverse the

Commissioner's decision. [Doc. 24]. The Commissioner responded [Doc. 25], and Posada replied [Doc. 26].

Posada alleges disability based on a number of ailments: degenerative lumbar spine disc disease, left carpal tunnel syndrome, shoulder arthralgia, diabetes mellitus, meniscus tear of the right knee, mild anxiety disorder, post-traumatic stress disorder (PTSD), depression, stimulant related disorder, alcohol use disorder, gastroesophageal reflux disorder (GERD), hiatal hernia, hypertension, and right thumb problems. AR at 23, 24. Posada ranked PTSD as her most disabling condition, with her hand arthritis, right knee problems, and diabetes following respectively. AR at 45, 46. Posada reports that her PTSD became "very bad" in 2004 after she was raped in the military and peaked in severity about 2011 when she landed in prison. AR at 46, 47. She claims the PTSD, depression, and anxiety contribute to sleep issues, anger problems, panic attacks, irritability, nightmares, mood swings, poor concentration, and flashbacks. AR at 27. She also complains of being scared to leave the house and to be around more than three people at a time. AR 49.

Posada reports that her hand problems began around 2008. AR at 54-55. She alleges bilateral hand arthritis prevents her from closing her hands or holding a glass. *Id.* Posada says that she wears a brace on her left hand almost every day and on both hands during cold weather. AR at 55. Regarding her right knee, Posada reports three past surgeries and a forthcoming surgery for a torn meniscus and a possible knee replacement. AR at 56. She complains of constant knee pain and needing a knee brace to walk. AR at 56-57. Similarly, Posada has undergone five shoulder surgeries and says she cannot lift more than ten to fifteen pounds. AR at 58, 59. She denies being able to lift objects above her head and can only extend her arms straight out. AR at 59. Posada has also been diagnosed with a pinched sciatic nerve and degenerated discs which leads to feeling pins and needles down her legs. AR at 60. Additionally, Posada has been diagnosed with type three

diabetes which she manages with daily insulin shots. AR 61-62. She testified that this adds further emotional and mental strain. AR at 62.

Posada's daily activities include vacuuming, cleaning her room, and other house chores. AR at 60. She and her father also take short walks with her dogs. AR at 62. For stress relief, she takes bike rides along the Rio Grande and for one to two hours, with about three ten-to-fifteen-minute breaks. AR at 63. Posada claims sobriety from drugs for the last year and only drinks occasionally. AR at 62. She takes the medications metformin, Wellbutrin, hydrocodone, labetalol, and dicumarol. AR at 64-65.

## II.   THE COMMISSIONER'S FINAL DECISION

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Administration must apply a five-step analysis to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[1]

The ALJ found at Step One that Posada had not engaged in substantial gainful activity from her alleged onset date of November 30, 2017, through the last insured date of December 31, 2019. AR at 23. At Step Two, the ALJ found that Posada has the following severe impairments: degenerative disc disease of the lumbar spine, left carpal tunnel syndrome (mild), arthralgia of the shoulder, diabetes mellitus, meniscus tear of the right knee, anxiety disorder, post-traumatic stress disorder (PTSD), and depression. *Id.* These conditions significantly reduced Posada's ability to perform basic work activities. *Id.*

---

[1] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

She also found that Posada had the following nonsevere impairments: stimulant related disorder, alcohol use disorder, gastoesophageal reflux disorder (GERD), hiatal hernia, hypertension, and right thumb problems. AR at 24. The ALJ observed that these non-severe impairments were generally managed. *Id.* Posada had remained sober and drank on occasion. *Id.* Her GERD and hernia did not cause abdominal pain or bowel changes. *Id.* Posada's normal heart sounds and rhythm indicated controlled hypertension which improved with medication. *Id.* Imaging revealed no abnormality of her right hand and only mild ulnar impaction. *Id.* Thus, the ALJ found that these conditions did no more than minimally affect Posada's ability to do work-related activities. *Id.*[2]

At Step Three, the ALJ found that Posada did not have a physical impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR part 404, Subpart P, Appendix 1. *Id.* The ALJ specifically considered listings for major dysfunction of a joint, disorders of the spine, and peripheral neuropathy; she also considered Posada's diabetes, which did not meet or medically equal a listing. AR at 25. The ALJ noted that Posada's attorney indicated that Posada's impairments did not meet or equal any listed. *Id.* She further accounted for the State agency medical consultants' opinions at the initial and reconsideration levels of the administrative process. *Id.*

The ALJ also found that Posada did not have mental impairments, singly or in combination, that medically met or equaled the listings' criteria. *Id.* She applied the four-category "paragraph B" mental impairment test. *id.* In the first category of understanding, remembering, or applying information, the ALJ determined that Posada had a mild limitation, citing favorable mental status examinations including memory and intelligence. *Id.* In the second category of interacting with

---

[2] Posada's alleged medial epicondylitis and foot pain are not considered medically determinable impairments. *Id.*

others, the ALJ found that Posada had a moderate limitation. *Id.* The ALJ noted that Posada often stays in her house, avoids crowds, and takes someone with her, but still hangs out with friends. *Id*. She also noted unremarkable mental status examinations with variation in mood. *Id.* In the third area of concentrating, persisting, and maintaining pace, the ALJ found that Posada had a moderate limitation. *Id.* The ALJ reasoned that Posada had difficulty concentrating fifty to sixty percent of the time and problems following instructions. *Id.* She also factored in Posada's mental status examinations reflecting good concentration, directed thought process, and thought content. *Id.* In the final category, adapting or managing oneself, the ALJ concluded that Posada had a moderate limitation, reconciling frequent physical reactivity from trauma triggers and episodes of panic and anger with her generally positive mental status examinations, lack of inpatient hospitalizations, good grooming and hygiene, and ability to perform chores. AR at 26. Based on these four findings, the ALJ found that Posada's mental impairments did not meet "paragraph B" criteria. *Id.*

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). Residual functional capacity ("RFC") is a multidimensional description of the work-related abilities a claimant retains despite impairments. 20 C.F.R. at § 404.1545(a)(1). It "does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." Social Security Ruling ("SSR") 96-8p at *Definition of RFC*. The ALJ determined that Posada could perform light work with limitations:

> I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could occasionally stoop, kneel crouch, crawl, and balance; could occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds; she should avoid exposure to unprotected heights and hazardous machinery and extreme cold; she could occasionally reach overhead and frequently reach in all other directions bilaterally; she could frequently handle and finger bilaterally; she could perform detailed but not complex work; she could have incidental interaction with supervisors and coworkers and no interaction with members of the public; she

>could perform work in a workplace with few changes in routine work setting; and she could remain on task for two hours at a time.

AR at 26. The ALJ used a two-step framework to reach this RFC: (1) whether a medically acceptable clinical or laboratory diagnostic technique existed which could reasonably produce Posada's symptoms; and (2) the degree to which Posada's work-related activities are limited by the intensity, persistence, and limiting effects of her symptoms. AR at 27. The second inquiry involves measuring the reported symptoms against the objective medical evidence. *Id.* Here, the ALJ determined that Posada's impairments could reasonably cause her alleged symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not reasonably consistent with the medical evidence and other evidence in the record." *Id.*

The ALJ extensively analyzed the evidence to support this finding. The Court will touch on the highlights. First the ALJ recounted Posada's own account of her ailments. *Id.* She documented that Posada alleged PTSD as her most disabling impairment, along with severe hand arthritis causing swelling and necessitating braces, constant right knee pain for which she wears a brace and awaits surgery, diabetes, low back pain, and shoulder problems. *Id.* Along with PTSD, the ALJ documented that Posada complains of depression, anxiety, sleep and anger problems, panic attacks, irritability, mood swings, poor concentration, and flashback. *Id.*

The ALJ considered Posada's mental status examinations which appeared generally within normal range with some instances of depression and anxiety. *Id.* Medication controlled her symptoms when she was compliant, which she admitted was not constant. AR at 28. The ALJ noted Posada's lack of inpatient treatment and denial of hallucinations, delusions, and ideations of self-harm. *Id.* To account for Posada's mental limitations, the ALJ included specific mental parameters in the RFC. *Id.* These limitations include no complex work, only incidental interaction

with supervisors and coworkers, no interaction with the public, a workplace with few routine changes, and two hours of remaining on task. *Id.*

The ALJ discussed Posada's various physical impairments to explain the physical RFC limitations. Concerning Posada's back and joint (right shoulder and knee) impairments, the ALJ reconciled Posada's pain complaints with her physical examinations. *Id.* Physical examinations showed equal extremity movement, normal lower extremity strength, normal back range of motion, intact neurological function, negative straight leg raising and shoulder sign, well-healed knee incisions, and normal gait. *Id.* (citing various exhibits in the record). Medical imaging corroborated these findings. *Id.* (revealing mild spinal and moderate back stenosis, an intact lateral meniscus and ACL, and prior medial meniscectomy). The ALJ also considered Posada's medication for these symptoms as well as conservative treatment methods. *Id.*

The ALJ also reconciled the alleged weakness, tingling, and cramping from Posada's carpal tunnel with the examinations showing no upper extremity atrophy and normal bilateral hand sensation and strength. *Id.* The ALJ considered a nerve conduction study showing mild left carpal tunnel; however, medication and wrist splints controlled the symptoms without surgical measures. AR at 29. The ALJ's diabetes mellitus assessment yielded a similar result. *Id.* Posada reported urinary frequency, thirst, and blurred visions. *Id.* (denying other symptoms). Notwithstanding, the ALJ observed that examinations produced normal urinary and eye results. *Id.* Medication treated Posada's elevated glucose and hemoglobin and generally controlled her diabetes. *Id.*

The ALJ measured Posada's health concerns against her reported daily activities. She noted that Posada denied any difficulties with common activities like personal care, household chores, shopping, preparing meals, and driving. She also considered Posada's reported physical activities like taking her dog on walks, biking up to two hours, doing pushups, shopping, sweeping, and

some years-ago construction cleanup. *Id.* Consequently, the ALJ concluded that Posada's "activities of daily living undermine her allegations of disabling symptoms." *Id.*

Next, the ALJ considered the medical opinions and prior administrative findings. *Id.* First, the ALJ found the state agency psychological consultant opinions persuasive. *Id.* They opined that Posada could "understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for two hours at a time, interact adequately with coworkers and supervisors, and respond appropriately to changes in a work setting." *Id.* The ALJ cited the record in support. *Id.* (describing Posada's generally pleasant demeanor and adequate memory, intelligence, and judgment, among other characteristics). The ALJ also detailed Posada's mental health treatment plan and results to corroborate the state psychological findings. AR at 30. The ALJ found that Posada's daily activities aligned with the state psychological findings as well. *Id.*

The ALJ similarly considered the state medical consultants' opinions persuasive against the backdrop of Posada's physical impairments. *Id.* The medical consultants opined that Posada could "perform light work with occasional stooping, kneeling, crouching, and crawling; occasional climbing or ramps and stairs; never climb ladders, ropes, or scaffolds." *Id.* The ALJ cited in support normal physical examinations. *Id.* She also considered that Posada's lumbar spine changes, right knee meniscus tear, and daily activities corroborated the state medical consultative opinions. *Id.*

The ALJ included manipulative limitations in the RFC due to Posada's mild carpal tunnel and rotator cuff tear. *Id.* She also imposed environmental limitations because Posada complained that cold weather exacerbated her physical symptoms (mainly back and hands). *Id.*

Based on this detailed assessment, the ALJ concluded:

> "the record considered as a whole supports some limitations in the claimant's ability to perform work-related activities. However, those limitations are adequately accommodated by the [RFC] set forth above which is consistent with

>objective medical findings and opinion evidence of record. As well as the claimant's documented activities. The record does not support greater limitations.

AR at 30-31. She also stated that her RFC is consistent with the State medical and psychological consultants' opinions. AR at 31.

At Step Four, the ALJ found Posada capable of performing her past relevant work as a gate guard. *Id.* The ALJ reasoned that Posada could work as a gate guard, as it is generally performed, after comparing the job's physical and mental demands with Posada's light work RFC. *Id.* The ALJ also cited the vocational expert's opinion that Posada could perform the gate guard functions as generally performed considering the job requirements and her RFC. AR at 31, 82.

In addition to finding that Posada could perform her past relevant work, the ALJ also made alternative Step Five findings. *Id.* She determined that "there were other jobs that existed in significant numbers in the national economy that [Posada] also could have performed" considering her age, education, work experience, and RFC. *Id.* Specifically, the ALJ relied on the vocational expert's testimony to find that Posada could perform the requirements of three unskilled jobs: (1) small products assembler, (2) collator operator, (3) and photocopy machine operator. AR at 32. The ALJ found the vocational expert's testimony consistent with the Dictionary of Occupational Titles ("DOT"). *Id.*

The ALJ also sent the vocational expert an interrogatory[3] after the hearing which asked about conflicts between the expert's testimony and the DOT, specifically overhead reaching. AR at 32, 291. The vocational expert checked the box "Yes (if yes, identify the conflict and explain

---

[3] The interrogatory in question read: "Are there any conflicts between the occupational evidence you have provided for question #8 and the occupational information contained in the DOT and/or the SCO? I am specifically wondering whether the reaching limitations contained in the hypothetical are consistent with the DOT?" AR at 291. Interrogatory number eight provided part: "At the hearing, you testified that the above hypothetical individual would be able to perform the past work of a gate guard as generally performed. You additionally testified that the individual could perform the following occupations: Small products assembler, DOT No. 706.687-022 . . . Collator operator, DOT No. 208.685-010 . . . Photo copy machine operator, DOT No. 207.685-014." *Id.*

9

the basis for your testimony" and explained "[t]he DOT does not address overhead reaching. This information [that Posada could do these jobs with her limitation] was based on my 28 years of experience in the vocational field." AR at 291. She identified no other conflicts. *See id.*

Based the above assessment of Posada's age, education, work experience and RFC, the ALJ found Posada "not disabled" under the Social Security Act. AR at 32-33.

### III. STANDARD OF REVIEW

I "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The Commissioner's findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance. *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007.

### IV. PARTIES' ARGUMENTS

Posada argues that the ALJ committed error by failing to ask the vocational expert to identify and resolve conflicts between the RFC's social limitations, the DOT's descriptions of her past relevant work and the three jobs the vocational expert identified at Step Five. Posada raises no other issues on appeal.[4] Posada makes two arguments under this framework. She first alleges that the ALJ erred in finding that she could perform her past relevant work as a gate guard because

---

[4] The Commissioner explains: Posada "raises no other arguments about substantial evidentiary support or legal error as it pertains to any of the ALJ's findings in the decision prior to step four and step five findings. Hence, Plaintiff has waived any arguments pertaining to those unchallenged finding. [Doc. 25, at p. 3] (citing *Anderson v. Dep't of Labor*, 422 F.3d 1155, 1174, 1182 n.51 (10th Cir. 2005)). I agree with the Commissioner's characterization in this regard.

10

its requirements are incompatible with the limitation of no contact with the general public. [Doc. 24, p. 9, 10]. The Commissioner concedes this argument and so I will not address it. [Doc. 25, p. 5]. Second, Posada alleges that the ALJ erred in failing to identify and resolve conflicts between the Step Five jobs and the DOT. [Doc. 24, 11, 12]. The Commissioner dismisses that this argument as underdeveloped. Doc. 25, p. 6]. Even if it were adequately briefed, the Commissioner reejects it because the ALJ inquired about DOT conflicts and, even had she not, any error is harmless. *Id.* at 6-8. For the below reasons, I find the Commissioner's arguments persuasive and recommend the Court deny Posada's Motion to Reverse and Remand.

## V.     ISSUE PRESENTED

Whether the ALJ erred at Step Five by failing to ask the vocational expert to identify and resolve conflicts between the DOT and expert testimony that Posada could perform the jobs requirements of small products assembler, collator operator, and photocopy machine operator, considering her limitation of no public interaction?

## VI.     ANALYSIS

**A.  Posada's arguments are conclusory and inadequately briefed.**

I agree with the Commissioner's initial response that Posada failed to sufficiently develop her arguments. Underdeveloped and unsupported arguments are not sufficient to invoke federal appellate review. *See, e.g., Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir.2012); *Mays v. Colvin,* 739 F.3d 569, 576 n.4 (10th Cir. 2014); *Murrell v. Shalala,* 43 F.3d 1388, 1389 n.2 (10th Cir.1994). Basic motions practice also requires a motion to "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B).

Posada did not state with particularity her grounds for believing that the ALJ did not ask the vocational expert about social conflicts between her testimony and the DOT. Posada only

11

provides conclusory citations and parentheticals vaguely relating to SSR 00-4p. [Doc. 24, p. 11, 12]. She fails cite to the record or otherwise integrate the facts of this case into the legal statements. *See id*. Posada does not explain what conflicts she thinks exists between the DOT definitions of small products assembler, collator operator, and photocopy machine operator, and the vocational expert's testimony that these jobs comport with Posada's strict social limitations. Nor does she analyze nor even quote the DOT definitions of those jobs. The lack of adequate briefing on those case-specific issues forecloses judicial review. However, because the Commissioner attempts to parse out Posada's presumed arguments, I will address the substantive points the Commissioner argues in response. *See* [Doc. 25, p. 6-8].

**B.  Posada's arguments would fail even assuming they were sufficiently developed.**

Posada's positions on the Step Five findings would not be meritorious even if properly briefed. The Commissioner "liberally construes" her statements as asserting that "the ALJ was required to ask the vocational expert about conflicts between the DOT and her testimony that Plaintiff could perform other occupations (small products assembler, collator operator, and photocopy machine operator) despite [Posada's limitation to no public interaction]." *Id.* at 6. Then the Commissioner raises another plausible interpretation, that Posada believes "the ALJ is required to ask the vocational expert whether there is a conflict on a restriction-by-restriction, occupation-by occupation basis." *Id.* at 7. The Commissioner denies any such requirement and I agree.

1. <u>The ALJ posed a proper hypothetical to the vocational expert and resolved any conflicts before relying on the expert testimony to deny disability.</u>

The burden shifts to the Commissioner at step five to show with substantial evidence that sufficient jobs exist in the national economy for a person with the claimant's impairments, age, education, and work experience. *See Jensen v. Barnhart,* 436 F.3d 1163, 1168 (10th Cir. 2005); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). An ALJ may rely on a vocational

12

expert's testimony to show substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019). The hypothetical posed to the vocational expert "must reflect with precision all—and only—the impairments and limitations borne out by the evidentiary record." *Rivera v. Berryhill*, 242 F. Supp. 3d 1226, 1237 (D.N.M. 2017) (citing *Grotendorst v. Astrue*, 370 Fed. Appx. 879, 883 (10th Cir. 2010)); *see Thompson v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014). The vocational expert's response to a hypothetical reflecting all impairments meets the substantial evidence standard for the ALJ's disability decision. *Rivera*, 242 F. Supp. 3d at 1237 (internal citation omitted).

However, an ALJ is required to "investigate and elicit a reasonable response for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of non-disability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). In that regard, SSR 00-4p provides:

> before relying on [vocational expert] ... evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] ... and information in the Dictionary of Occupational Titles (DOT) ... and [e]xplain in the determination or decision how any conflict that has been identified was resolved.

SSR 004p, 2000 WL 1898704, at *1 (Dec. 4, 2000). Further, if an "apparent unresolved conflict" does exist between the vocational expert evidence and the DOT, the ALJ must obtain a reasonable explanation for the conflict before relying on the vocational expert's testimony to support a decision regarding disability. *Id.* Even if an ALJ fails to ask about potential conflicts, however, the oversight is harmless if there is no actual conflict between the vocational expert's testimony and the DOT. *Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009) (collecting cases).

I find no error regarding the ALJ's reliance on the vocational expert's hypothetical response nor her application of SSR 00-4p. The ALJ's hypothetical question to the vocational expert complied with the limitation-inclusive hypothetical formulation described above. *See*

13

*Rivera*, 242 F. Supp. 3d at 1237; *Thompson*, 551 F. App'x at 949. During Posada's hearing, the ALJ asked a hypothetical incorporating all RFC limitations:

> Please assume an individual of Ms. Posada's age, education, and vocational background. This individual can perform work at the light exertional level. This individual can occasionally stoop, kneel, crouch, crawl, balance. Can occasionally climb ramps and stairs. Can never climb ladders, ropes, or scaffolds. Should avoid exposure to unprotected heights, hazardous machinery and extreme cold. This individual can occasionally reach overhead and can frequently reach in all other directions bilaterally. This individual can perform detailed but not complex work. *Can have incidental interaction with supervisors and coworkers and no interaction with members of the public*. Can perform work in a workplace with few changes in the routine work setting. This individual can remain on task for two hours at a time.

AR at 82 (emphasis added). The vocational expert responded that Posada could perform the requirements of small products assembler, collator operator, and photocopy operator with these restrictions. AR at 82-83. Posada did not object or otherwise interject during this line of hypothetical questioning. I find no error in this hypothetical.

Nor do I find a violation of SSR 00-4p. The ALJ asked the vocational expert in a post-hearing interrogatory whether the expert identified any conflicts between her testimony and the DOT or Selected Characteristics of Occupations (SCO) regarding the reaching limitation. AR at 291. The vocational expert resolved the overhead reaching limitation and identified no other apparent conflicts. *See id.* The ALJ cited this interrogatory response in her decision. AR at 32. This is what the law requires before the ALJ relies on the expert testimony. *See Haddock*, 196 F.3d at 1091; SSR 004p, 2000 WL 1898704, at *1. The ALJ was thus allowed to rely on the vocational expert's testimony to deny disability.

  2. <u>No actual conflict exists between the vocational expert's testimony regarding the Step Five jobs and the DOT, rendering any error harmless.</u>

Moreover, even if the ALJ had not asked the vocational expert about DOT conflicts, there would still be no error because no conflict exists between the three Step Five jobs and the public

14

interaction limitation. *See Poppa*, 569 F.3d at 1174. None of these jobs require interaction with the public pursuant to their respective DOT descriptions. As the Commissioner explains, "[a] people rating of "8"[5] is the last rating on the People Worker Function scale, which indicates that the occupation requires the *least* amount of social interaction among all occupations in the national economy." [Doc. 25, p. 8]. Each of the three jobs here has a people rating "8": small products assembler. (DOT # 706.6**8**4-022)[6]; collator operator (DOT # 208.6**8**5-010)[7]; photocopy operator (DOT # 207.6**8**5-014)[8]. Thus, the DOT does not tie these jobs to any public contact. *See supra*, n. 6-8; *see also* [Doc. 25, p. 8] (explaining that neither taking instructions from supervisors, helping coworkers, nor talking is required in these jobs). In light of the effectively non-existent human

---

[5] The fifth number in a DOT code denotes its "people rating": **PEOPLE**: Human beings; also animals dealt with on an individual basis as if they were human.; **8 Taking Instructions-Helping:** Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to "non-learning" helpers. https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPB

[6] 706.684-022 ASSEMBLER, SMALL PRODUCTS I (any industry) alternate titles: bench assembler: **"**Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled. *GOE: 06.04.23   STRENGTH:   L   GED:   R2   M1   L1   SVP:   2   DLU:   79.* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT07A.

[7] 208.685-010 COLLATOR OPERATOR (clerical): Tends machine that assembles pages of printed material in numerical sequence: Adjusts control that regulates stroke of paper pusher, according to size of paper. Places pages to be assembled in holding trays. Starts machine. Removes assembled pages from machine. *GOE: 05.12.19   STRENGTH:   L   GED:   R2   M1   L1   SVP:   2   DLU:   77.* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02A.

[8] 207.685-014 PHOTOCOPYING-MACHINE OPERATOR (clerical): Tends duplicating machine to reproduce handwritten or typewritten matter: Places original copy on glass plate in machine. Places blank paper on loading tray. Sets control switch for number of copies. Presses button to start machine which transfers image of original copy onto blank paper by photographic and static electricity process. May clean and repair machine. May receive payment for duplicate copies. Important variables may be indicated by trade name of machine intended. *GOE: 05.12.19 STRENGTH:   L   GED:   R2   M1   L1   SVP:   2   DLU:   77.* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02A.

contact inherent in these jobs, there is no conflict between the vocational expert's testimony and the DOT on Posada's social limitations. Therefore, I find no error.

3. Posada's reply is also conclusory.

Posada's reply does nothing to advance her appeal. The only rebuttal Posada musters is that the Commissioner used *post-hoc* rationale to cure the conflict. [Doc. 26, p. 1]. Posada also concludes that "the VE is required to provide an explanation regarding whether these jobs can be performed with no public contact" because the least amount of public contact under DOT "is not the same as no public contact." *Id.* Posada claims support from cases which frown upon *post-hac* rationalization but fails to connect the law to the substance of the matter at hand by showing specific authority for her proposition that a People Worker Function score of "8" connotes a substantial amount of personal contact.

## VII.    CONCLUSION AND RECOMMENDATION

For these reasons, I **RECOMMEND** that the Court **DENY** Plaintiff Yamira Posada's Motion to Reverse and Remand, [Doc. 24] and **AFFIRM** the Commissioner's Final Decision in this case.

JERRY H. RITTER
U.S. MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**